```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                      GALVESTON DIVISION


DOYCE WALDROP, individually      §
and as the guardian and next     §
friend of Jeanette Robinson,     §
and AUDREY WALDROP,              §
                                 §
          Plaintiffs,            §
                                 §
v.                               §      CIVIL ACTION NO. G-08-0149
                                 §
PENN TREATY NETWORK AMERICA      §
INSURANCE COMPANY and            §
NORMAN SPENCER CHANDLER, JR.,    §
                                 §
          Defendants.            §
```

MEMORANDUM AND ORDER

Pending is Plaintiffs Doyce Waldrop, individually and as the guardian and next friend of Jeanette Robinson, and Audrey Waldrop's Motion to Remand (Document No. 14). After carefully considering the motion, response, and the applicable law, for the reasons that follow the Court concludes that the motion should be denied.

I.  Background

In 1999, Jeanette Robinson, mother of Doyce Waldrop (together with Audrey Waldrop, "Plaintiffs"), purchased a long-term care insurance policy from Penn Treaty Network America Insurance Company ("Penn Treaty"), a Pennsylvania citizen, in the event that she became mentally incapacitated and needed care.  Id., ex. A.1 at 3-4.  Penn Treaty's sales agent at the time of Mrs. Robinson's

purchase was Norman Chandler, Jr. ("Chandler"), a citizen of Texas. Plaintiffs also are citizens of Texas. According to Plaintiffs, Chandler represented that the policy "would pay to keep [Mrs. Robinson] in her home, cared by family [sic], in the event that she was disabled by any cognitive function disease or disease process"--a representation Plaintiffs evidently now maintain was false. Id., ex. A.1 at 3. In 2001, Mrs. Robinson became incapacitated from the effects of Alzheimer's and recurrent strokes, and received care in her home. Id. In June 2001, Mrs. Robinson's home was badly damaged by Tropical Storm Allison, and evidently she moved thereafter into Plaintiffs' newly built home, which included quarters for Mrs. Robinson. Plaintiffs allege that in the years that followed they had numerous difficulties with Penn Treaty's timeliness of payments under the policy, its arbitrary and extra-contractual demands upon Plaintiffs, the incompetency of caregivers that Penn Treaty required Plaintiffs to hire for Mrs. Robinson's care in Plaintiffs' home, and the like. Id., ex. A.1 at 6. Plaintiffs assert that they have been damaged by Chandler's misrepresentations about the policy's coverage if Penn Treaty's interpretation of the policy is correct, and by Penn Treaty's refusal to pay covered losses in accordance with the policy. Id., ex. A.1 at 6-13.

Plaintiffs allege (1) breach of contract; (2) breach of the duty of good faith and fair dealing; and (3) breach of the statutory duties imposed by the Texas Insurance Code and the

Deceptive Trade Practices Act ("DTPA").  *See* id., ex. A.1 at 6-12. In addition, Plaintiffs seek a declaration that Penn Treaty "is obligated to pay maximum benefits under the policy." *See* id., ex. A.1 at 13.

Penn Treaty removed Plaintiffs' case from state court, with Chandler's consent, alleging diversity jurisdiction on the basis that Chandler was improperly joined.  *See* Document No. 1 at 4-7. Plaintiffs now move for remand contending that removal was improper because there are viable causes of action against Chandler, who is a citizen of Texas, as are Plaintiffs.[1]  *See* Document No. 14.

## II.  Discussion

Penn Treaty asserts that the causes of action against Chandler for breach of contract and breach of duty of good faith and fair dealing are precluded as a matter of law and on the basis of the applicable statutes of limitations.  *See* Document No. 1 at 2-7. Therefore, according to Penn Treaty, this Court has jurisdiction over Plaintiffs' case because complete diversity exists between Plaintiffs, both Texas citizens, and Penn Treaty, a Pennsylvania citizen, and the amount in controversy exceeds the requisite $75,000.  *See* Document No. 1 at 7-8.  In their Motion to Remand, Plaintiffs concede that an insurance agent cannot be held liable

---

[1] Nowhere do Plaintiffs challenge the amount in controversy or Penn Treaty's evidence that the amount in controversy exceeds the $75,000 threshold.  *See* Document No. 1, ex. B.

3

for breach of contract or breach of duty of good faith and fair dealing absent a contract giving rise to a "special relationship" between the insured and the insurance agent, which is not present in this case, but they contend that there are viable causes of action against Chandler for negligent misrepresentation and for violations of the Texas Insurance Code and the DTPA. *See* Document No. 14 at 5-7.

A defendant may remove to federal court a civil action over which the federal court has diversity jurisdiction. 28 U.S.C. §§ 1332(a), 1441(b). Federal district courts have diversity jurisdiction over civil actions in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States." Id. § 1332(a). When a plaintiff moves to remand for lack of jurisdiction, the burden of establishing jurisdiction and the propriety of removal rests upon the defendant. *See* Miller v. Diamond Shamrock Co., 275 F.3d 414, 417 (5th Cir. 2001). Any doubts as to the propriety of the removal must be resolved in favor of remand. *See* In re Hot-Hed Inc., 477 F.3d 320, 323 (5th Cir. 2007).

When removal is based on allegations of improper joinder, the removing party has the heavy burden of proving improper joinder. *See* Great Plains Trust Co. v. Morgan Stanley Dean Witter, 313 F.3d 305, 312 (5th Cir. 2002). "[Improper] joinder can be established

4

in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *See* Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003). With respect to the latter, the issue is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc). In deciding whether a plaintiff could possibly establish a claim against a non-diverse defendant, the Court must apply the law of the state in which the action was brought--in this case, Texas. Travis, 326 F.3d at 647; Hart v. Bayer Corp., 199 F.3d 239, 247 (5th Cir. 2000). Ordinarily, the court must conduct a Rule 12(b)(6)-type analysis, examining the allegations in the complaint to determine whether the plaintiff has stated a claim against the non-diverse defendants. *See* Larroquette v. Cardinal Health 200, Inc., 466 F.3d 373, 376 (5th Cir. 2006).

If, however, the complaint has "misstated or omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *See* id. When courts are called upon to pierce the pleadings, as here, they should avoid "pretrying [the] case to determine removal jurisdiction." Carriere

v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir. 1990). "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." Smallwood, 385 F.3d at 574.[2] As evidence to be used in a pierce-the-pleadings inquiry, "'[i]n support of their removal petition, the defendants may submit affidavits and deposition transcripts; and in support of their motion to remand, the plaintiffs may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint.'" Carriere, 893 F.2d at 100 (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981)).

As observed above, Plaintiffs readily concede that an insurance agent cannot be held liable for breach of contract or breach of duty of good faith and fair dealing absent a contract giving rise to a "special relationship" between the insured and the insurance agent. See Vargas v. State Farm Lloyds, 216 F. Supp. 2d 643, 647 (S.D. Tex. 2002) (citing Natividad v. Alexsis, Inc., 875 S.W.2d 695, 697-98 (Tex. 1994)); C & C Partners v. Sun Exploration & Prod., 783 S.W.2d 707, 721 (Tex. App.--Dallas 1989, pet. denied). As no "special relationship" has been pled, there is no reasonable

---

[2] In Smallwood, the Fifth Circuit provided several examples of the type of inquiry appropriate under a pierce-the-pleadings inquiry: "For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." Smallwood, 385 F.3d at 574 n.12.

basis for predicting that Plaintiffs could recover against Chandler for breach of contract or breach of duty of good faith and fair dealing.  That being said, Texas courts *do* permit private causes of action against insurance agents for violations of the Texas Insurance Code, violations of the DTPA, and for negligent misrepresentation.  *See* Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 486 (Tex. 1998) (holding that insurance agents can be liable for deceptive or misleading acts under the Texas Insurance Code); Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999) (recognizing that Texas courts permit causes of action against insurance agents for their deceptive acts under the DTPA and Insurance Code); Sabine Towing & Transp. Co. v. Holliday Ins. Agency, Inc., 54 S.W.3d 57, 62-63 (Tex. App.–Texarkana 2001, pet. denied) (recognizing in a case against an insurance agent, that negligent misrepresentation claims are subject to the two-year statute of limitations).

Plaintiffs' Original Petition specifically invokes against Chandler the Texas Insurance Code, § 541.060, and the DTPA, Tex. Bus. & Com. Code Ann. § 17.50.  *See* Document No. 1, ex. A.1 at 10-11.  In addition, Plaintiffs in their Motion to Remand argue and set out the elements for a claim of negligent misrepresentation, which was not alleged against Chandler in Plaintiffs' Original Petition.  *See* Document No. 14 at 5-6.  Claims for deceptive or misleading acts under the DTPA, the Insurance Code, and the tort of negligent

7

misrepresentation must be brought within two years from the date that the consumer/insured/complainant knew or should have known about the deceptive or misleading act.  *See* Tex. Bus. & Com. Code Ann. § 17.565; Tex. Ins. Code Ann. § 541.162; Sabine Towing & Transp. Co., 54 S.W.3d at 60.

Plaintiffs allege in their Original Petition--filed in 2008--that Chandler sold the policy to Mrs. Robinson in 1999, at which time he "represented that the policy would pay to keep her in her home, cared by family, in the event that she was disabled by any cognitive function disease or disease process." No other representation is alleged to have been made by Chandler. Defendant attached Chandler's sworn Declaration to its Notice of Removal, in which Chandler avers that he left his insurance sales job for Penn Treaty on August 17, 1999, and thereafter has had "no contact or communications with Plaintiffs and have not provided or performed any services on or in connection [with] the policy Plaintiffs purchased from Penn Treaty or Plaintiffs' claims under the policy." This discrete verified fact is unrefuted by Plaintiffs and therefore stands uncontroverted. According to Plaintiffs' Petition, Mrs. Robinson's illness was not diagnosed until September, 2001, more than two years after Chandler's contacts with Plaintiffs and with Penn Treaty had ended. Chandler's sole contact with Mrs. Robinson or Plaintiffs, therefore, was necessarily in connection with Mrs. Robinson's purchase of the policy. Plaintiffs

allege that Penn Treaty for many years after Mrs. Robinson became ill refused to pay in accordance with the policy and otherwise violated the policy. Their theory of action against Chandler is premised on the possibility that "if the carrier is correct in its policy interpretation, . . . then Defendant Norman Spencer Chandler, Jr. has breached his contract to provide insurance to Plaintiff." In other words, if Penn Treaty in the years after Mrs. Robinson became ill administered the policy correctly, then it is Chandler who misled Plaintiffs as to the terms of Mrs. Robinson's policy.

Accepting Plaintiffs' premise, Plaintiffs knew or should have known of Chandler's alleged misrepresentation or other tortious act several years before they sued him. They allege that after Doyce Waldrop applied in November, 2002, to be the full-time paid "family care giver" for his mother, that "Penn Treaty undertook a policy of 'delay-deny-defend,' and refused to pay in accordance with the policy. For many years, the Waldrops struggled with Penn Treaty's arbitrary and extra-contractual demands for forms, licensure, and other matters . . . ." and "Penn Treaty's arbitrary and capricious handling of the claim resulted in long periods of delay between payments." Plaintiffs complain that Penn Treaty was "formulating strategies to delay payment," and that "Jeanette Robinson's care became increasingly difficult and expensive."

A fair reading of Plaintiffs' Petition reflects that Plaintiffs' complaints regarding Penn Treaty's interpretation and

administration of the policy and its performance thereunder was a matter of long-standing and repeated complaint by Plaintiffs dating back at least until just after November, 2002, when Doyce Waldrop had built a new home which included quarters for Mrs. Robinson and applied to be the full-time paid "family care giver" for his mother.  Any alleged violation of the Texas Insurance Code, the DTPA, or negligent misrepresentation committed or made by Chandler about the policy's coverage or Penn Treaty's expected administration of the policy or payment of benefits thereunder, when he sold the policy to Mrs. Robinson before August 17, 1999, was therefore fully known to Plaintiffs for well more than two years before they filed this suit on May 12, 2008.  All such claims against Chandler are barred by the applicable two-year statutes of limitations.  Accordingly, there is no reasonable basis for predicting that Plaintiffs can recover against Chandler under any of their asserted causes of action, and Chandler must be disregarded as improperly joined.  Because there is complete diversity of citizenship between Plaintiffs and Defendant Penn Treaty, the Court has diversity jurisdiction.

III. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant Norman Spencer Chandler, Jr. is DISMISSED as a Defendant improperly joined, and Plaintiffs' Motion to Remand (Document No. 14) is DENIED.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 6th day of August, 2008.

```
                    _____
                         EWING WERLEIN, JR.
                      UNITED STATES DISTRICT JUDGE
```