UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DOYCE WALDROP, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. G-08-149 |
| | § | |
| PENN TREATY NETWORK AMERICA | § | |
| INSURANCE COMPANY, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

**I.     INTRODUCTION**

Before the Court are the motions for summary judgment of the defendant, Penn Treaty Network America Insurance Company ("Penn Treaty") (Document Nos. 51 and 52) brought against the plaintiffs, Doyce and Audrey Waldrop and Doyce Waldrop, guardian and next friend of Jeannette Robinson, pursuant to Fed.R.Civ.P. 56(c).  The plaintiffs have filed a combined response in opposition (Document No. 53) to Penn Treaty's motion.  All relevant pleadings are before the Court.  Having reviewed the motions, response and the authorities presented, the Court is of the opinion that the Penn Treaty's motions for summary judgment should be granted.

**II.     FACTUAL BACKGROUND AND CONTENTIONS**

The policyholder, and insured on Policy Number N629912, Jeanette Robinson retired in 1999 a single woman. Because of a family history that revealed that the disease of Alzheimer's was a possibility for her, Robinson purchased a long-term care policy of insurance, the Personal Freedom Policy, from Penn Treaty, effective September 1, 1999.  True to her fears, Robinson was diagnosed to have the Alzheimer diseases in September 2001.  Three months earlier, however, she had suffered a stroke that required hospitalization and rehabilitation.  Therefore, by

the time that she was diagnosed with Alzheimer's, she had applied for benefits under her Freedom Policy. See [Exhibit A (Document No. 51-1) to Penn Treaty's motion for summary judgment].

Robinson lived in her own home until she suffered a stroke. After her hospitalization for the stroke, Robinson was admitted to Hearthstone Assisted Living, where she was diagnosed with Alzheimer's. In 2002, Robinson moved into the Waldrops' home and Doyce Waldrop, her son, became her legal guardian in 2007. Prior to this event, the Waldrops had handled Robinson's business affairs utilizing a power of attorney. Request applications, by the Waldrops to Penn Treaty for the "family member care benefits" under the Policy were, according to the plaintiffs, repeatedly denied.

### A.   **The Plaintiffs' Contentions**

According to the plaintiffs, Penn Treaty conditioned the receipt of any payment. The plaintiffs assert that Penn Treaty required them to add a second kitchen to their home in order that it might qualify as a Care Home, when, under the terms of the Policy, they were already qualified to receive the "daily benefit" payments under the "Family Member as Caregiver" provision of the Policy. As a result of Penn Treaty's conduct, the plaintiffs assert that they lost investments, incurred tax liability that they would not have otherwise incurred and, eventually, lost their home to foreclosure.

As a result of Penn Treaty's conduct, the plaintiffs brought their suit against Penn Treaty on or about May 12, 2008, asserting claims for breach of contract, violation of the Deceptive Trade Practices Act ("DTPA"), violation of the Texas Insurance Code, for acts of bad faith and for a declaratory judgment.

### B.     Penn Treaty's Contentions

Penn Treaty contends that the dispute between the parties arises out of an insurance policy and Penn Treaty points out that the Court granted a motion for partial summary judgment that the maximum benefits had been paid under the Policy by September of 2007. Moreover, the plaintiffs' claim for a declaratory judgment was, therefore, rendered moot. *See* [Document No. 26]. Regarding the plaintiffs' claims in contract and tort, Penn Treaty argues: (1) the Waldrops are not parties to the insurance contract between Penn Treaty and Robinson; (2) the Waldrops have no standing to sue under the contract or for any extra-contractual claims that might arise from the insurance contract; (3) the Statutes of Limitation (2 and 4 year) bar Robinson's claims for breach of extra-contractual and breach of contract prior to May 12, 2006 and May 12, 2004, respectively. As a result, Penn Treaty contends that Robinson has no viable claim for bad faith or violations of the Insurance Code and the DTPA because all requested payments between May 12, 2006 and August 31, 2007 were promptly paid. Likewise, Penn Treaty contends that between May 12, 2004 and August 31, 2007, the maximum daily benefits were paid and, therefore, Robinson has no viable claims for breach of contract.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence

rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."  Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

### IV.   ANALYSIS AND DISCUSSION

The plaintiffs admit that all benefits payable under the Policy from May 12, 2004 and September 1, 2007, have been paid. And, the Court observes, there does not appear to be a claim for unpaid benefits after September 1, 2007. Hence, the plaintiffs' complaint seeks recovery for penalties and damages that arose as a result of Penn Treaty alleged delay in payments from 2002 to 2004, when the Waldrops first made application to receive benefits as Robinson's family

4

member caregiver.  The Waldrops also argue that they are third party beneficiaries to Robinson's Policy and, therefore, are entitled to bring suit in their own behalf.  In light of the undisputed facts presented here, it will be unnecessary for the Court to address this contention.  It is sufficient to the resolution of the Waldrops' claims, if any, that Robinson's claims are resolved, because the Waldrops' claims are derivative and in no way exceed those of Robinson.

The Texas Statute of Limitations for breach of contract and for extra-contractual claims are four (4) and two (2) years, respectively.  *See* Tex.Civ.Prac.&Rem.Code §§ 16.070, 16.003(a).  Hence, the Statute of Limitations for Robinson's causes of action for breach of contract and for extra-contractual claims date back four and two years, respectively, from the inception of this suit.  *Id*.  This suit was commended on May 12, 2008.  There is no evidence presented by Robinson, and it is not argued, that any cause of action accrued after May 12, 2004.  *See Via Net v. TIG, Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006).  Therefore, for Robinson, her cause of action accrued when Penn Treaty first wrongfully denied her the benefit that she sought in 2002.  *Id*.

Likewise, Robinson's extra-contractual claims cannot predate May 12, 2006, two years prior to the commencement of her suit.  *See Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221-23 (Tex. 2003).  In this regard, the plaintiffs' complaint asserts claims of bad faith violations of the Insurance Code and violations of the DTPA in 2002.  During this period, the plaintiffs claim that Penn Treaty acted in bad faith, denying the benefits payable and requiring the Waldrops to build a second kitchen.  Even if true, these alleged acts on the part of Penn Treaty occurred more than two (2) years prior to the date of the plaintiffs' suit, and are, therefore, barred by the applicable Statute of Limitations.  As well, Robinson's claims for breach of the duty of good faith and fair dealing and violation of the Prompt Payment Statute, Tex.Ins.Code Ann. §§ 542.051 et. seq., are time barred.

The testimony of the Waldrops confirm that Robinson's claims are time barred. They admitted in their deposition testimony that between May of 2004 and may of 2008, they are not aware of wrongful conduct on the part of Penn Treaty. And, while the Waldrops are unhappy with the manner in which the claims adjustors handled the file from 2002 to 2004, they could not point to any medical care that was denied Robinson as a result of the adjustors' conduct since 2004. Finally, there does not appear to be any representations made to Robinson or her guardian by Penn Treaty that are not barred by limitations.

## V.  CONCLUSION

The Court is of the opinion that Penn Treaty's motion for summary judgment should be GRANTED. *See* Fed.R.Civ.P. 56(c). In like manner, its motion against the Waldrops should be GRANTED because their suit, if any, is derivative of that of Robinson.

It is so ORDERED.

SIGNED at Houston, Texas this 1st day of March, 2011.

_____
Kenneth M. Hoyt
United States District Judge